FILED

2021 Jan-20 PM 04:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| CRM MOTORS, INC., | ) | |
| an Alabama Corporation; | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: |
| | ) | |
| AMERICA'S AUTO AUCTION | ) | |
| BIRMINGHAM, INC., an Alabama | ) | |
| Corporation; | ) | |
| PEGGY IVEY, an individual; | ) | |
| MCCLARY FORD | ) | |
| LINCOLN-MERCURY, INC.; | ) | |
| an Illinois Corporation; | ) | **JURY TRIAL DEMANDED** |
| ARDMORE AUTO SALES LLC, | ) | |
| an Alabama Limited Liability Company; | ) | |
| STOGNER MANAGEMENT I, INC., | ) | |
| a Georgia Corporation; | ) | |
| HOLLY AUTOMOTIVE, LLC, | ) | |
| an Alabama Limited Liability Company; | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

## I. INTRODUCTION

On or about April 17, 2019, Plaintiff CRM Motors, Inc., a Pelham, Alabama, used car dealership, purchased a 2008 Ford Explorer, VIN XXXXXXXXXXXX83037, from America's Auto Auction Birmingham, Inc.

located in Moody, Alabama. The auction sales documents, the vehicle's odometer and the title for the vehicle all stated the Ford Explorer had been driven approximately 94,180 miles. Many months later, Plaintiff CRM Motors, Inc. found out that the Ford Explorer actually had been driven in excess of 190,000+ miles before CRM's purchase.

Months before CRM's purchase, in January of 2019, Defendant McClary Ford Lincoln Mercury of Athens, Alabama, bought the Ford Explorer from a customer for $1,000.00 as a non-running, 190,000 mile, trade-in. After McClary Ford, the title to the vehicle passed through three more automobile dealerships prior to CRM Motor's purchase at America's Auto Auction. As part of the sales documents provided to CRM by America's Auto Auction, CRM Motors received a document referred to as a "Secure Power of Attorney," which falsely attested that the 2008 Ford Explorer had only been driven 93,840 miles. The "Secure Power of Attorney" is a false document, and the signature on the document a forgery, but was purportedly "witnessed" and notarized by America's Auto Auction's title clerk Defendant Peggy Ivey.

McClary Ford failed to make written disclosure of the vehicle's mileage on the vehicle title, contrary to the requirements of 49 U.S.C. §32705. Each and every subsequent transfer of the vehicle stated a false odometer reading on the vehicle in violation of 49 U.S.C. § 32703. All of these transfers were supported by the false

document and forged signature notarized by America's Auto Auction's title clerk, Peggy Ivey.

49 U.S.C. 32703(4) provides that a person may not "conspire to violate this section or section 32704 or 32705 of this title." All Defendants named herein are and were part of a conspiracy to sell a high-mileage vehicle disguised as a low mileage vehicle in order to profit from the deception.

Each Defendant named herein knowingly violated state and federal statutes intended to document and preserve the mileage of the vehicle. All Defendants were active participants in a scheme to make false representations as to the vehicle's mileage. Such practice was intended to defraud Plaintiff CRM Motors as well as every future owner of the vehicle.

Plaintiff CRM Motors requests this Court put an end to this deceptive and illegal conduct.  Plaintiff CRM Motors further requests the Court award Plaintiff damages as set forth herein, and otherwise as the Court may deem appropriate.

## II.   <u>JURISDICTION</u>

1. This is not a diversity action. Jurisdiction is proper under 28 U.S.C.A. §1331 and given to district courts for "all civil actions arising under the Constitution, laws, or treaties of the United States." Such federal question jurisdiction may arise from the

initial pleading or from subsequent motions, pleadings, or other papers where the federal question is first able to be ascertained.  42 U.S.C.A. 1446(b).

2.   Federal question jurisdiction arises from the initial pleading and Plaintiff's assertions for violations of the Federal Odometer Act, 49 U.S.C. §32701 *et seq*.

3.  This Court has supplemental jurisdiction over related Alabama state law claims asserted in this action pursuant to 28 U.S.C. §1367.

4.  A jury trial is demanded pursuant to the 7th Amendment of the Constitution of the United States, for all causes triable to a jury.

## III.   **VENUE**

5.  Venue in this District is proper pursuant to 28 U.S.C. §1391 (b) and (c) because one or more Defendants conduct business and/or maintains its principal place of business in the Northern District of Alabama, and the wrongful conduct out of which Plaintiff's claims arise occurred within the Northern District of Alabama. Additionally, Plaintiff resides within this District.

# IV.   <u>PARTIES</u>

<u>**Plaintiff**</u>

6.  Plaintiff **CRM MOTORS, INC**. is an Alabama corporation whose principal place of business is located in Pelham, Alabama, within the Northern District of Alabama.

<u>**Defendants**</u>

7. Defendant, **AMERICA'S AUTO AUCTION BIRMINGHAM, INC.,** hereinafter referred to as "America's Auto Auction," is an Alabama Corporation whose principal address is listed with the Alabama Secretary of State as 14951 Dallas Parkway, Suite 200, Dallas, Texas 75254.  America's Auto Auction does business and conducts an auction at 1046 A.E. Moore Drive, Moody, Alabama 35004. This is the auction location where the sale of the subject vehicle took place.

8.     Defendant, **PEGGY IVEY**, hereinafter referred to as "Ivey" is an individual, who through information and belief, resides within the Northern District of Alabama. Through information and belief, Ms. Ivey is a title clerk for **AMERICA'S AUTO AUCTION BIRMINGHAM, INC.,** and performs her work for **AMERICA'S AUTO AUCTION BIRMINGHAM, INC.,** at 1046 A.E. Moore Drive, Moody, Alabama 35004.

9. The Defendant **MCCLARY FORD LINCOLN-MERCURY, INC**., is an Illinois Corporation, which is in the business of selling new and used cars to the general public in Athens, Alabama.

10. Defendant **ARDMORE AUTO SALES LLC**, is an Alabama Limited Liability Company, which is in the business of selling new and used cars, and owns and operates its dealership located in Ardmore, Alabama within the Northern District of Alabama.

11. Defendant **STOGNER MANAGEMENT I, INC**., d/b/a LaGrange Toyota, is a Georgia Corporation, which is a new and used car dealership located in LaGrange, Georgia, and which purchased the subject vehicle from Defendant Ardmore Auto Sales LLC and sold the subject vehicle to Defendant Holly Automotive, LLC.

12. Defendant, **HOLLY AUTOMOTIVE, LLC**, is an Alabama limited liability company, whose principal place of business is located in Pell City, Alabama, within the Northern District of Alabama.

13. In doing the acts and omissions alleged in this Complaint, the Defendants, MCCLARY FORD LINCOLN-MERCURY, INC, ARDMORE AUTO SALES LLC, STOGNER MANAGEMENT I, INC., HOLLY AUTOMOTIVE, LLC, AMERICA'S AUTO AUCTION BIRMINGHAM, INC. and PEGGY IVEY,

conspired with and among other individuals and entities whose names are currently unknown, to engage in the conduct made the subject of this Complaint, and acted as agents of one another, pursuant to a common goal or scheme, to carry out the wrongful conduct and to conceal that conduct.

14.     As the principal of its employees and agents, the Defendants are liable to the Plaintiff for any and all damages suffered by the Plaintiff as a result of the unlawful acts of the Defendants' employees.  Furthermore, after receiving notice of the matter alleged herein, Defendants had a duty under the Code of Alabama, 1975 32-8-1, *et seq.* and the Motor Vehicle Information Costs Savings Act also known as the Federal Odometer Act, 49 U.S.C. § 32701 *et seq*, to correct and remedy the alleged conduct in order to prevent further damage to the public.

## V. FACTUAL ALLEGATIONS

15.     The Plaintiff, CRM Motors, is a licensed automobile dealership, located within the Northern District of Alabama, in business to sell good quality used automobiles to the general public.  Plaintiff, as part of its normal routine business practice, purchases automobiles from auctions to add to its existing inventory.

***Relevant history of the 2008 Ford Explorer:***

16.    Through information and belief, in January of 2019, Defendant McClary Ford Lincoln Mercury of Athens, Alabama, bought the 2008 Ford Explorer as a "trade-in" from a non-party customer for $1,000.00. The 2008 Ford Explorer trade-in had been driven approximately 190,000 miles, did not run, and was towed to McClary Ford.

17.    Through information and belief, McClary Ford had actual knowledge that the subject Ford Explorer's odometer had been replaced, that the mileage on the odometer was incorrect, and that the true mileage was about 190,000 miles.  This mileage is reflected on McClary Ford's sales documents under which McClary Ford purchased the vehicle as a trade-in. A copy of McClary Ford's "Bill of Sale" reflecting the 2008 Ford Explorer trade-in price and mileage is attached hereto as **Exhibit A**. McClary Ford failed to complete the portion of the reverse side of the title for the "Assignment of Title by Registered Owner" which was required to document the transfer of title from the non-party customer trading in the vehicle to McClary Ford. A copy of the front and reverse sides of the 2008 Ford Explorer Alabama Certificate of Title is attached as **Exhibit B**.

18.    Following McClary Ford's purchase of the 2008 Ford Explorer, on or about February 1, 2019, McClary Ford sold the 2008 Ford Explorer to Defendant

Ardmore Auto. The title indicated the vehicle's odometer read 93,840 "ACTUAL" miles at the time of sale. <u>See</u> Exhibit B, reverse side of title.

19.    On or about February 5, 2019, the 2008 Ford Explorer vehicle was sold by Ardmore Auto to Defendant LaGrange Toyota in LaGrange, Georgia.  The title indicates the vehicle's odometer read 94,180 "ACTUAL" miles at transfer from Ardmore Auto to LaGrange Toyota. <u>See</u> Exhibit B, reverse side of title.

20.    On or about March 2, 2019, LaGrange Toyota of LaGrange, Georgia, sold the vehicle to Defendant Holly Automotive of Pell City, Alabama. The title indicates the vehicle's odometer read 94,180 "ACTUAL" miles at the transfer from LaGrange Toyota to Holly Automotive. <u>See</u> Exhibit B, reverse side of title.

21.    As part of Defendants McClary Ford, Ardmore Auto, LaGrange Toyota and Holly Automotive's routine course of business, it was common practice between dealerships to sell or transfer new vehicles without applying for a new Official Alabama Certificate of Title.  This practice is accomplished by documenting the transfer as an assignment between dealers on the back of the original certificate of title supplied by the State of Alabama and the selling dealership.

22.    All aspects of Federal and State law regarding disclosures and mileage recording are applicable to transfers between dealerships.  These practices are the same for all new and used car dealerships. In Alabama, motor vehicle dealers are

required to be licensed, and each automobile dealer is required to be trained and overseen as a title agent by the Alabama Department of Revenue as part of its compliance with the Uniform Certificate of Title and Anti-Theft Act.

23.    Despite its knowledge of the odometer replacement, discrepancy and the actual mileage on the vehicle, Defendant McClary Ford failed to fill out or complete the mileage disclosures on the 2008 Ford Explorer's title document when it purchased the vehicle from its non-party customer as a trade-in.

24.    Defendant McClary Ford also either failed to fill out or complete the mileage disclosures on the 2008 Ford Explorer's title document when it transferred the vehicle to Defendant Ardmore Auto, or it intentionally certified that the 2008 Ford Explorer's mileage was 93,840 miles at the time of transfer.

25.    McClary Ford also failed to indicate on the Ford Explorer's title document that an odometer did not reflect the actual mileage on the vehicle. All of these acts and conduct by McClary Ford are, *inter alia*, violations of the Federal Odometer Act, 49 U.S.C. 32705(a), which requires a transferor to make disclosures regarding mileage and discrepancies be made on the face of the title.

26.    Liability under the Act also attaches to subsequent transferees, because a person acquiring a vehicle for resale is in violation of the Act if they accept an incomplete disclosure. 49 U.S.C. 32705(a).

*How Plaintiff acquired the 2008 Ford Explorer:*

27.     On or about April 17, 2019, Plaintiff CRM's representative went to Defendant America's Auto Auction's auction location in Moody, Alabama to view and potentially purchase additional automobiles to add to its existing sales inventory.

28.     While CRM's representative was at Defendant America's Auto Auction, CRM's representative observed a 2008 Ford Explorer, VIN XXXXXXXXXXXX83037, for sale. The mileage visible on the odometer was approximately 94,000 miles.  One of the key factors Plaintiff utilized in determining whether this vehicle qualified for purchase and resale was the mileage indicated on the odometer.  Based in part on the Explorer's odometer reading of approximately 94,000 miles, Plaintiff CRM Motors bid on and purchased the vehicle for $7,500.00 plus additional auction fees in the amount of $335.00, for a total price of $7,835.00. No title discrepancies were announced by America's Auto Auction.

29.     Following CRM's purchase of the Ford Explorer, America's Auto Auction provided CRM title documents, including a State of Alabama "Certificate of Title

for a Vehicle," title number 44135453 and an Alabama Department of Revenue Form MVT 5-7 "Affidavit of Correction to a Document To Support an Application for a Certificate of Title." The title stated the Ford Explorer's mileage was 94,180 miles on March 2, 2019.  The affidavit stated the Ford Explorer's mileage was 93,480 on January 30, 2019.  The affidavit was witnessed and notarized by Peggy Ivey, a Notary Public for the State of Alabama.  Through information and belief, Peggy Ivey, also known as Peggy Beth Ivey, is employed by America's Auto Auction in Moody Alabama. A copy of the Form MVT 5-7 "Affidavit of Correction" is attached hereto as **Exhibit C**.

30.    The purpose of Alabama Department of Revenue Form MVT 5-7 "Affidavit of Correction" is to correct a mistake or erroneous information on the vehicle's title certificate.  Alabama Regulation and Administrative Code § 810-5-75-.39 requires:

> (2) If an assignment of title contains an error, Form MVT 5-7, Affidavit of Correction to a Document to Support an Application for Certificate of Title, must be completed to correct the assignment.

> (3) When the information shown on a certificate of title needs to be corrected, a new certificate of title is required. In order to have the corrected certificate of title issued, the owner must make application for a new certificate of title through a designated agent.

> Ala. Admin. Code § 810-5-75-.39

31.     Plaintiff CRM Motors LLC was unaware of the mileage discrepancy when it purchased the subject 2008 Ford Explorer from America's Auto Auction. At that time, Defendants Ardmore Auto Sales, Lagrange Toyota, Holly Automotive, America's Auto Auction, and Peggy Ivey, each and all, had represented and certified that the mileage listed on the vehicle odometer was approximately 94,000 miles, and the odometer was accurate. No mileage discrepancy was identified on any of the sales or title documents provided to the Plaintiff.

### *The effect of improper, incomplete, and false mileage disclosures:*

32.     Plaintiff relied upon the representations of McClary Ford, Ardmore Auto Sales, Lagrange Toyota, Holly Automotive, America's Auto Auction and Peggy Ivey when viewing, and relying on, the mileage listed on the vehicle's odometer, and by verifying, and relying on, the odometer mileage on the vehicle title executed by or for McClary Ford, Ardmore Auto, LaGrange Toyota, and Holly Automotive, and on the "Affidavit of Correction" signed and notarized by Peggy Ivey.  Plaintiff relied upon said representations by purchasing the vehicle, placing the vehicle in its inventory, performing repairs on the vehicle, and reselling the vehicle to one of its customers. In reliance on the Defendants' representations, Plaintiff represented to its customers, and to the general public, that the vehicle's mileage as shown on the odometer was accurate, true, and correct. Such

representations by Plaintiff create and become part of its public image, foundation of public trust, and a measure of its integrity.

33.    By intentionally failing to represent the true mileage of the vehicle, filing a false affidavit regarding mileage disclosures, rolling back/replacing the odometer and misrepresenting the actual mileage on the vehicle, the Defendants were able to sell the vehicle at the higher price than its actual value.   Had the Defendants noted the actual mileage on the disclosures, and not replaced or rolled back the odometer, Plaintiff would not have purchased the vehicle.

34.    Following an odometer rollback and false mileage disclosure, such as that set forth herein, every subsequent purchaser, including Plaintiff herein, becomes a victim of the Defendants' misrepresentations because they are wholly unaware that the vehicle's mileage, economic life, and value is substantially less than what is represented.

*How Plaintiff learned about the false mileage disclosures:*

35.    On or about October 3, 2019, Plaintiff CRM Motors sold the 2008 Ford Explorer automobile to a third-party consumer.  At the time of the sale, Plaintiff was unaware of the mileage discrepancy, and believed that the automobile's odometer stating 94,395 miles indicated the vehicle's actual miles.

36.     A few months later, Plaintiff's customer returned the Ford Explorer to the Plaintiff.  At that time, Plaintiff's customer asserted that he had discovered that the mileage on the vehicle was substantially more than what was identified in the sale by the Plaintiff.  Plaintiff's customer demanded that the Plaintiff buy the vehicle back.  Only at this time did Plaintiff become aware of the odometer discrepancy.

37.     Through the aforedescribed conduct, Defendants were able to sell the vehicle at a higher price than its actual value by misrepresenting the true mileage of the vehicle and failing to disclose the known mileage discrepancy on the vehicle's odometer. Had Defendants noted the actual mileage on its advertisements, sales documents, and the odometer disclosures, and informed CRM of the actual mileage, CRM would not have purchased the vehicle or would have only purchased the vehicle at a substantially lower price.

38.     In addition to damage to CRM Motors' loss of its customer, its loss of apparent integrity and damage to its reputation, as a proximate result of the conduct of Defendants, CRM was caused to suffer loss of monies, loss of value of the vehicle, incidental and consequential damages. CRM Motors' actual damages include, but are not limited to: (a) increased purchase costs; (b)

increased taxes; (c) repurchase from its customer; (d) increased repair costs; (e) additional costs; (f) costs of this action, and (g) attorney's fees.

## VI.   CAUSES OF ACTION

### COUNT ONE:

### VIOLATIONS OF THE MOTOR VEHICLE INFORMATION COST SAVINGS ACT -  49 U.S.C. 32701 *et seq* (FEDERAL ODOMETER ACT) - All Defendants -

39.   CRM Motors hereby incorporates and adopts each of the above and foregoing allegations and material averments as if fully set forth herein.

40.   As part of its routine course of business, and as mandated by federal and state law, including the Federal Odometer Act, codified at 49 U.S.C. 32701 *et seq*, automobile dealerships, auctions, and auction employees, such as McClary Ford, Ardmore Auto Sales, Lagrange Toyota, Holly Automotive, America's Auto Auction and Peggy Ivey, and employees, members, and agents of said dealerships, including, but not limited to Defendants named herein, provide purchasers of the automobiles with an "Odometer Disclosure Statement"

certifying the accuracy of the odometer as well as the mileage on the vehicle at the time of transfer.

41.    From February 1, 2019 to present, McClary Ford and Ardmore Auto Sales knowingly and intentionally represented to the public at large, including the Plaintiff, and the State of Alabama, that the 2008 Ford Explorer made the subject of this action had been driven 93840 miles at the time of transfer from McClary Ford to Ardmore Auto Sales and that the subject vehicle's odometer reading was correct.  This representation was made in writing on the reverse side of the Alabama Certificate of title, title number 44135453, and acknowledged by the signatures of Dana Holloway of McClary Ford and Adam Mullins of Ardmore Auto Sales

42.    From February 5, 2019 to present, Ardmore Auto Sales and Lagrange Toyota knowingly and intentionally represented to the public at large, including the Plaintiff, and the State of Alabama, that the 2008 Ford Explorer made the subject of this action had been driven 94,180 miles at the time of transfer from Ardmore Auto Sales to LaGrange Toyota. This representation was made in writing on the reverse side of the Alabama Certificate of title, title number 44135453,  and acknowledged by Adam Mullins of Ardmore Auto Sales and Bart Phillips of LaGrange Toyota.

43.     On March 2, 2019 through to the present date, Lagrange Toyota and Holly

Automotive knowingly and intentionally represented to the public at large,

including the Plaintiff, and the State of Alabama, that the 2008 Ford Explorer

made the subject of this action had been driven 94,180 miles at the time of

transfer from LaGrange Toyota to Holly Automotive. This representation was

made in writing on the reverse side of the Alabama Certificate of title, title

number 44135453, and acknowledged by Bart Phillips of LaGrange Toyota and

Dawn Hackworth of Holly Automotive.

44.     On or about April 19, 2019, Peggy Ivey, acting individually and as an agent

of both America's Auto Auction and Holly Automotive, signed, acknowledged

and notarized the state of Alabama form MVT 5-7 "Affidavit of Correction to a

Document To Support an Application for Certificate of Title", stating the mileage

was "93840." Greg Willingham did not sign this document. Peggy Ivey did not

witness Greg Willingham sign this document.  Greg Willingham's signature on

the application is a forgery of his signature. Peggy Ivey's "acknowledgement" of

Greg Willingham's signature is a fraud.

45.     McClary Ford and its employee or agents failed to certify and/or state the

mileage on the 2008 Ford Explorer's title at the time of its transfer to Ardmore

Auto Sales. McClary Ford had actual knowledge that the vehicle's actual mileage

at the time of the sale to Ardmore Auto Sales was unknown and through information and belief, was more than 190,000 miles. The odometer disclosures and statements created and executed by McClary Ford were (a) incomplete; (b) did not state the vehicle's mileage; and, (c) did not indicate the mileage discrepancy known to McClary Ford.

46.     McClary Auto Sales violated the Federal Odometer Act, 49 U.S.C. §32705, "Disclosure requirements on transfer of motor vehicles," by failing to make proper and required odometer disclosures. 49 U.S.C. 32705(a) requires that (A) the cumulative mileage on the odometer be disclosed, and (B) any discrepancy in the odometer reading be disclosed.

47.     By its conduct as set forth herein, Ardmore Auto, LaGrange Toyota, Holly Automotive, America's Auto Auction, and Peggy Ivey, with intent to defraud, all certified mileage that was known, or should have been known, by these Defendants to be unknown, inaccurate and/or false. America's Auto Auction and Peggy Ivey forged signatures, falsely acknowledged signatures and created false documents and affidavit for the purpose of certifying the subject vehicle's mileage to be approximately 94,000 miles rather than the unknown and approximately 190,000 miles the vehicle really had been driven.  Due to these

Defendants' combined fraudulent conduct, CRM Motors was induced to purchase the vehicle.

48.     All Defendants violated federal laws that required each of them to accurately disclose the odometer reading at the time of each sale.

49.     McClary Ford, Ardmore Auto, LaGrange Toyota, Holly Automotive, America's Auto Auction, Peggy Ivey, and other Defendants whose identities are unknown to Plaintiff at this time, by its, their, his and/or her conduct, and acting in concert and/or individually, willfully, and with the intent to defraud, violated the Federal Odometer Act in at least one or more of the following respects:

a.      In making odometer disclosures, each and every Defendant made incomplete and/or false statements on the disclosure, and/or gave false statements to a transferee, Plaintiff CRM Motors, in violation of 49 U.S.C. §32705(a) and 49 C.F.R. §580.4;

b.      Defendants failed to provide a correct disclosure to CRM Motors, pursuant to 49 U.S.C. §32705;

c.      Defendants altered, or caused to be altered, the odometer of the automobile with the intent to change the number of miles indicated;

d. Other violations of the Federal Odometer Act, or a regulation prescribed or order issued under the Act;

e. In all matters relating to the subject vehicle, Defendants' actions and representations were made with intent to defraud.

50.    As a result of the above violations of the Federal Odometer Act, Defendants are liable to CRM Motors pursuant to 49 U.S.C. § 32710 for the greater of three-time actual damages or $10,000.00, plus attorney's fees and costs.

51.    Plaintiff CRM Motors prays that the Court will award statutory damages as outlined above, as well as compensatory damages in an amount a jury deems appropriate to compensate CRM Motors for its actual damages, loss of monies, incidental and consequential damages, attorney's fees and costs of this proceeding as well as punitive damages to deter such conduct in the future.

## COUNT TWO:

## FRAUD/MISREPRESENTATION/FRAUDULENT SUPRESSION

## - All Defendants –

52.    Plaintiff hereby incorporates and adopts each of the above and foregoing allegations as if fully set forth herein.

53.    From February 1, 2019 to present, McClary Ford and Ardmore Auto Sales knowingly and intentionally represented to the public at large, including the Plaintiff, and the State of Alabama, that the 2008 Ford Explorer made the subject of this action had been driven 93,840 miles at the time of transfer from McClary Ford to Ardmore Auto Sales and that the subject vehicle's odometer reading was correct. This representation was made in writing on the reverse side of the Alabama Certificate of title, title number 44135453, and acknowledged by the signatures of Dana Holloway of McClary Ford and Adam Mullins of Ardmore Auto Sales

54. From February 5, 2019 to present, Ardmore Auto Sales and Lagrange Toyota knowingly and intentionally represented to the public at large, including the Plaintiff, and the State of Alabama, that the 2008 Ford Explorer made the subject of this action had been driven 94180 miles at the time of transfer from Ardmore Auto Sales to LaGrange Toyota. This representation was made in writing on the reverse side of the Alabama Certificate of title, title number 44135453,  and acknowledged by Adam Mullins of Ardmore Auto Sales and Bart Phillips of LaGrange Toyota.

55.    On March 2, 2019 through to the present date, Lagrange Toyota and Holly Automotive knowingly and intentionally represented to the public at large, including

the Plaintiff, and the State of Alabama, that the 2008 Ford Explorer made the subject of this action had been driven 94180 miles at the time of transfer from LaGrange Toyota to Holly Automotive. This representation was made in writing on the reverse side of the Alabama Certificate of title, title number 44135453,  and acknowledged by Bart Phillips of LaGrange Toyota and Dawn Hackworth of Holly Automotive.

56.    On or about April 19, 2019, Peggy Ivey, acting individually and as an agent of both America's Auto Auction and Holly Automotive, signed, acknowledged and notarized the state of Alabama form MVT 5-7 "Affidavit of Correction to a Document To Support an Application for Certificate of Title", stating the mileage was "93840." Greg Willingham's signature on the application is a forgery of his signature. Greg Willingham did not sign this document. Peggy Ivey did not witness Greg Willingham sign this document. Peggy Ivey's "acknowledgement" of Greg Willingham's signature is a fraud.

57.    Through these misrepresentations, non-disclosures, suppressions, and/or omissions of the actual title and mileage status and condition of the vehicle, McClary Ford, Ardmore Auto, LaGrange Toyota, Holly Automotive, America's Auto Auction, Peggy Ivey, and other Defendants whose identities are unknown to Plaintiff at this time, by its, their, his and/or her conduct, and acting in concert and/or individually, caused Plaintiff CRM Motors to pay a higher purchase price for the

vehicle, suffer other costs and damages, and other incidental and consequential damages, to its detriment.

58.    Said representations were false. McClary Ford, Ardmore Auto, LaGrange Toyota, Holly Automotive, America's Auto Auction, and Peggy Ivey knew the representations were false at the time they were made, and either: a) intentionally and willfully made said representations; b) recklessly or negligently made said representations, thereby causing CRM Motors to reasonably rely upon them; or, c) innocently or mistakenly made said representations all in such a way to cause CRM Motors to reasonably rely upon the representations.

59.    Defendants McClary Ford, Ardmore Auto, LaGrange Toyota, Holly Automotive, America's Auto Auction, and Peggy Ivey, further misrepresented that the odometer cluster had not been replaced, was working properly, the mileage could be certified, and the mileage displayed on the odometer was true and correct.

60.    Through this non-disclosure of the actual title and mileage status and condition of the vehicle, all Defendants caused Plaintiff to pay a higher purchase price, suffer other increased costs, and other incidental and consequential expenses, to its detriment.  Furthermore, even after said misrepresentations were brought to the attention of McClary Ford, Ardmore Auto, LaGrange Toyota, and Holly

Automotive, rather than correcting the misrepresentation, they ratified and endorsed the conduct described herein.

61.    Furthermore, by its conduct in withholding and continuing to withhold the proper disclosures under Alabama and Federal law even after being made aware of the discrepancy as outlined above, withholding information concerning the vehicle's prior mileage, and withholding information when it was under a duty to speak truthfully and fully, Defendants willfully, recklessly, innocently misrepresented and/or fraudulently suppressed material information, which had that information been available to the Plaintiff at the time of sale, would have resulted in the Plaintiff not purchasing the vehicle.

62.    Plaintiff reasonably relied upon said representations by purchasing the vehicle.   Plaintiff also reasonably relied upon these representations by incurring expenses and costs consistent with exercising ownership rights in the vehicle, making repairs to the vehicle, and reselling the vehicle to a third party.

63.    As a proximate result of the conduct of the Defendants, the Plaintiff, CRM Motors, was caused to suffer loss of monies, incidental and consequential damages, including but not limited to: a) increased purchase costs;  b) increased taxes; c) Increased finance costs; d) Increased insurance costs; e) Increased repair costs; f) repurchase from its customer; g) as well as additional costs, plus attorney's fees.

64.    WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Court will award damages in an amount a jury deems appropriate to compensate the Plaintiff for its actual damages including loss of monies, incidental and consequential damages, attorney's fees and costs of this proceeding as well as punitive damages to deter such conduct in the future.

## COUNT THREE:  WANTONESS/NEGLIGENCE

### - All Defendants -

65.    Plaintiff CRM Motors hereby incorporates and adopts each of the above and foregoing allegations and material averments as if fully set forth herein.

66.    All Defendants owed Plaintiff, and each and every future purchaser of the subject vehicle, and the general public at large, a duty not to be wanton/negligent in their conduct relative to subject 2008 Ford Explorer's title and odometer. All Defendants owed CRM Motors a duty to make truthful representations as to the vehicle's odometer and mileage. Defendants owed CRM Motors a duty in not engaging in or allowing its agents to engage in the wrongful practices herein alleged, in not misrepresenting, suppressing or concealing such activities, or enabling its agents to do so, and violate state and federal regulations and statutes, including, but not limited to: (a) Uniform Certificate of Title and Anti-Theft Act Code of Alabama 1975 §32-8-1, *et seq;* and, (b) the Federal Odometer Act, 49 USC § 32701 *et seq*.

67.    As described herein, Defendants, singularly, in concert, and/or by and through its agents, employees, owners, members, managers and/or officers, willfully and wantonly violated the above state and federal statutes and regulations and/or ratified or adopted the conduct after the fact, which includes, but is not limited to, Defendants' representations to the public at large, including CRM Motors, that the subject vehicle had been driven approximately 94,000 miles at the time of acquisition by CRM Motors and that there were no odometer discrepancies.

68.    Defendants owed CRM Motors a duty not to be wanton, negligent and/or reckless in its conduct both before and after the sale of the vehicle, as described herein, including, but not limited to, the following conduct:

     a.    Misrepresenting the mileage on the vehicle;

     b.    Failing to comply with state and federal laws, including, inter alia, regulations regarding vehicle odometer disclosures.

     c.    Other conduct inconsistent with Defendants' obligations and duties under the contract.

69.    Defendants America's Auto Auction and Peggy Ivey were further negligent in its and her forgery of signatures, creation of false documents and false acknowledgements and notarizations.

70.   Defendants' conduct constitutes negligent, wanton, reckless, and/or "negligence per se" breaches of the duties owed to CRM Motors.  Such breaches arose out of the conduct of the Defendants, and those who acted in concert or conspiracy with it, or acted as its agents, servants or employees, while in the line and scope of its business, and its contractual and statutory duties to CRM Motors in order to preserve and protect the financial interest of Defendants.

71.   By its, her, and their conduct, the Defendants breached said duties to CRM Motors and were reckless, wanton, and/or negligent.

72.   As a proximate result of the conduct of the Defendants, CRM Motors was caused to suffer loss of monies, incidental and consequential damages, including but not limited to:   a) Increased purchase costs; b) increased taxes; c)          increased finance costs;   d) increased insurance costs; e) increased repair costs; f) loss of value; g) As well as additional costs, plus attorney's fees.

73.   CRM Motors prays that the Court award damages in an amount a jury deems appropriate to compensate CRM Motors for its actual damages, loss of monies, incidental and consequential damages, damages, attorney's fees, and costs of this proceeding as well as punitive damages to deter such conduct in the future.

## COUNT FOUR:  FRAUDULENT SUPPRESSION/CONCEALMENT

## -All Defendants -

74.    CRM Motors adopts and incorporates all preceding paragraphs as if fully stated herein.

75.    When purchasing an automobile, buyers such as CRM Motors must trust all person(s) and entities in the chain of title of the vehicle, including McClary Ford, Ardmore Auto, LaGrange Toyota, and Holly Automotive, to provide good-faith and truthful information on the title disclosures, during the title disclosure process, and to honestly handle its/their duties under applicable federal and state statutes, as well as the duties owed as a designated title agent for the State of Alabama. These duties are implied in the transaction and required by law.

76.    McClary Ford, Ardmore Auto, LaGrange Toyota, and Holly Automotive, as a routine practice in the process of executing odometer disclosure documents, hid and/or withheld important facts from CRM Motors, including, without limitation, the actual vehicle mileage, the fact that the vehicle's odometer was not accurate, and Defendants' suppression of same.

77.    CRM Motors was harmed because McClary Ford, Ardmore Auto, LaGrange Toyota, Holly Automotive, America's Auto Auction and Peggy Ivey hid or withheld

these important facts from CRM Motors regarding the vehicle.  It was the intention of McClary Ford, Ardmore Auto, LaGrange Toyota, Holly Automotive, America's Auto Auction and Peggy Ivey that these facts be secret, concealed, hidden, and undisclosed, in order that McClary Ford, Ardmore Auto, LaGrange Toyota, Holly Automotive, America's Auto Auction and Peggy Ivey's scheme and pattern and practice of selling vehicles with false mileage certifications, creating false documents and forging signatures selling vehicles with undisclosed inaccurate odometers continue without detection, for the purpose of increasing profit.

78.    McClary Ford, Ardmore Auto, LaGrange Toyota, Holly Automotive, America's Auto Auction and Peggy Ivey and McClary Ford, Ardmore Auto, LaGrange Toyota, Holly Automotive, America's Auto Auction and Peggy Ivey's agents and employees hid and suppressed the fact, during and after the transaction for the sale of the subject vehicle, that the vehicle's real mileage was not as set forth on the disclosures, or as disclosed to CRM Motors.  This was accomplished through the forging of signatures, the misrepresentations of McClary Ford, Ardmore Auto, LaGrange Toyota, Holly Automotive, America's Auto Auction and Peggy Ivey to CRM Motors, as well as misuse and abuse of Defendants' status as designated title agents.

79.    Defendants had a duty to disclose these facts to CRM Motors, as Defendants,

and its, her and their agents, employees, officers, members, owners and/or managers, were automobile dealers, acting and appointed as designated title agents for the state of Alabama, and required to abide by state and federal laws.

80.    The facts withheld by McClary Ford, Ardmore Auto, LaGrange Toyota, Holly Automotive, America's Auto Auction and Peggy Ivey were material to CRM Motors.   CRM Motors would not have executed the purchase and financing documents and purchased the vehicle, had it known that McClary Ford, Ardmore Auto, LaGrange Toyota, Holly Automotive, America's Auto Auction and Peggy Ivey, and its, her, and their agents, and/or its employees, had withheld these material facts from CRM Motors.

81.    McClary Ford, Ardmore Auto, LaGrange Toyota, Holly Automotive, America's Auto Auction and Peggy Ivey, its agents, and/or its employees and the individuals named herein withheld these material facts to induce CRM Motors to execute sales, titling, and financing documents, and purchase the subject vehicle for an unlawfully inflated sales price. CRM Motors executed the sale without knowledge of these material facts because Defendants concealed such facts from CRM Motors.

82.    As a direct and proximate result of the fraudulent concealment by McClary Ford, Ardmore Auto, LaGrange Toyota, Holly Automotive, America's Auto

Auction and Peggy Ivey, and Defendants' agents and/or employees, CRM Motors was caused to suffer loss of monies, incidental and consequential damages, including but not limited to:  a) Increased purchase costs; b)  Increased  taxes;  c)  Increased finance costs; d) Increased insurance costs; e) Increased repair costs; f)  Loss of value; g) Additional costs, plus attorney's fees.

83.    CRM Motors requests that this court award damages in an amount appropriate to compensate him for his damages, loss of monies, incidental and consequential damages, in an amount to be determined by a struck jury, plus punitive damages, attorney's fees, and costs of this proceeding.

## COUNT FIVE:  BREACH OF EXPRESS WARRANTIES

### - All Defendants -

84.    Plaintiff adopts and re-alleges all of the material allegations and averments contained in the above and foregoing paragraphs as if fully set forth herein.

85.    Prior to CRM's purchase of the subject 2008 Ford Explorer, Defendants offered express warranties on the face of the certificate of title and the vehicle including but not limited to: that the mileage recorded on the Alabama Certificate of Title was the correct mileage, that the vehicle's mileage was approximately 94,000 miles at the time of CRM Motors' purchase of the vehicle at America's Auto

Auction, and that the disclosures contained on the sales documents were true and correct. Defendants also expressly warranted that the vehicle had only been driven 94,180 miles.

86.   Plaintiff is part of the class of persons intended to be the third-party beneficiaries of the representations made by the Defendants on the Certificate of title.   By its conduct, Defendants breached express warranties to the Plaintiff, including, but not limited to, those set forth in Uniform Commercial Code § 2-312 and § 2-313, and the codification of same under the Code of Alabama § 7-2-312 and § 7-2-313.

87.   As a proximate result, the Plaintiff has been caused to suffer loss of monies, incidental and consequential damages, loss of value to the vehicle, additional costs incurred with replacing/repurchasing the vehicle, costs plus attorney's fees.

88.   WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that this court will award damages in an amount appropriate to compensate it for its loss of monies, incidental and consequential damages, in an amount to be determined by a struck jury plus attorney's fees and costs of this proceeding.

## COUNT SIX:  UNJUST ENRICHMENT

### - All Defendants -

89.    Plaintiff adopts and incorporates all preceding paragraphs as if fully set out herein.

90.    Defendants have received a benefit at the expense of Plaintiff.  By altering the odometer mileage and other practices alleged in this Complaint, Defendants received unlawfully inflated profits on its sale to Plaintiff.

91.    Defendants intended to and have benefited from the unlawful scheme by, among other things, selling vehicles to buyers with inaccurate mileage reading and rolled-back odometers, increasing profits from fraudulently inflated sales prices or vehicle values, and receiving additional profits from the sale thereof.

92.    It is unjust and inequitable to permit Defendants to retain the benefits they have obtained through its unlawful scheme by means of violating state and federal statutes, false pretenses, representations or promises.  The financial benefits obtained by Defendants should not, in fairness, be retained by them but rather should be paid and returned to Plaintiff.

93.    As a direct and proximate result of the inequitable conduct by Defendants, its agents, and/or its employees, the Plaintiff was caused to suffer loss of monies, incidental and consequential damages, including but not limited to: a)Increased purchase costs; b) increased taxes; c) Increased finance costs;    d)Increased

insurance costs; e) Increased repair costs; f)  Repurchase from its customer;  g)   as well as additional costs, plus attorney's fees.

94.     WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that this court will award damages in an amount appropriate to compensate it for its loss of monies, incidental and consequential damages, in an amount to be determined by a struck jury plus attorney's fees and costs of this proceeding.

## COUNT SEVEN:

## NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION

95.     The preceding paragraphs of this Complaint, and any additional factual averments set forth this Complaint, are repeated and incorporated by reference in this Count.

96.     Defendants McClary Ford, Ardmore Auto, LaGrange Toyota, Holly Automotive, and America's Auto Auction owed CRM Motors a duty of care and professionalism in training and supervising its employees and agents to perform those services in full compliance with the laws of the State of Alabama and the Federal government, in not engaging in or allowing its employees and agents to engage in the wrongful practices herein alleged, in not suppressing or concealing such activities, or enabling its agents to do so, and in terminating or otherwise

disciplining those employees and agents known to have violated company policies, state laws or regulations by engaging in the misconduct herein alleged, or employees and agents known to have suppressed material information or to have made material misrepresentations to CRM Motors.

97.    McClary Ford, Ardmore Auto, LaGrange Toyota, Holly Automotive, and America's Auto Auction owed duties to CRM Motors in putting forth loyal, honest, and fair-dealing employees and agents who act in compliance with Federal and State law, contractual, and other obligations that arise from the special or confidential relationship between the parties, Alabama statutes and regulations governing the automotive industry, and the duties of a designated agent for title transfers.

98.    McClary Ford, Ardmore Auto, LaGrange Toyota, Holly Automotive, America's Auto Auction and Peggy Ivey breached its and their duties by negligently retaining employees and agents known to have violated state and/or Federal laws relating to the mandatory disclosures required at the time of vehicle purchases. These employees are known to have violated McClary Ford, Ardmore Auto, LaGrange Toyota, Holly Automotive, and America's Auto Auction's stated company policies and procedures regarding the sale of automobiles, proper transfer of titles, and mandatory disclosures.

99.    McClary Ford, Ardmore Auto, LaGrange Toyota, Holly Automotive, and America's Auto Auction's negligent retention of employees and agents known to have engaged in the misconduct described herein acted as ratification of such misconduct.

100.    McClary Ford, Ardmore Auto, LaGrange Toyota, Holly Automotive, and America's Auto Auction, through its and their employees and agents, breached its and their duties owed to CRM Motors, and such breaches arose out of the negligent or wanton conduct of the Defendants, and those who acted in concert or conspiracy with it or acted as its agents, servants or employees, and in the line and scope of its and their business, and in carrying out its and their contractual and statutory duties, in order to preserve, protect, and further the financial interests of Defendants.

101.    McClary Ford, Ardmore Auto, LaGrange Toyota, Holly Automotive, and America's Auto Auction knew, or should have known, of the wrongful or fraudulent practices engaged in by its employees and agents, and knew, or should have known, that its own training, supervision and retention practices were inadequate to fulfill its obligation to protect the public from unscrupulous, dishonest, and deceptive practices by its agents and employees.

102.    Defendants McClary Ford, Ardmore Auto, LaGrange Toyota, Holly Automotive, and America's Auto Auction knew, or should have known, that its

policies and practices in training, supervising and retaining such employees were inadequate to prevent or detect the misconduct described herein, and such inadequate policies and practices were the actual and proximate cause of CRM Motor's injuries described herein.

103.  CRM Motors has incurred damages proximately caused by Defendants' breaches and negligence in training, supervising and retaining its employees.  As a proximate result of the conduct of the Defendants, CRM Motors was caused to suffer loss of monies, incidental and consequential damages, including but not limited to: a) Increased purchase costs; b) Increased taxes; c) Increased finance costs; d) Increased insurance costs; e) Increased repair costs; f) Loss of value; g) As well as additional costs, plus attorney's fees.

104.     CRM Motors prays that the Court will award damages in an amount the Court deems appropriate to compensate CRM Motors, for its loss of monies, and incidental and consequential damages, in an amount to be determined by a jury, as well as attorney's fees and costs of this proceeding, and punitive damages to deter such conduct in the future.

## COUNT EIGHT: REQUEST FOR INJUNCTIVE RELIEF

## - All Defendants -

105.     Plaintiff incorporates by reference all of the material allegations set forth in the above paragraphs as if fully set forth herein.

106.     Plaintiff and the general public will suffer continuing irreparable injury unless the conduct of the Defendants alleged in the above and foregoing paragraphs is halted, the Defendants are educated, trained, and made to comply with its duties as a designated title agent for the State of Alabama; and comply with the laws of the State of Alabama and the United States of America.  Furthermore, the Defendants should be enjoined to correct the disclosures on the title documents, and recall and/or correct any false/fraudulent affidavits made on the 2008 Ford Explorer vehicle made the basis of this suit.

## VII.   RELIEF REQUESTED

Plaintiff requests this Court enter an award against the Defendants as follows:

1. Award Plaintiff compensatory damages, and all statutory, exemplary damages and equitable relief permitted by law;

2.  Award Plaintiff punitive damages as a result of the Defendants' fraudulent, willful, wanton and unlawful conduct;

3.  Award Plaintiff all costs of prosecuting this action, together with interest and reasonable attorneys' fees;

4. Award a permanent injunction, or any other injunctive relief deemed appropriate, preventing the Defendants from acting as a designated title agent for the State of Alabama to process and transfer automobile titles until such time as its management and employees have corrected false information submitted to the Alabama Department of Revenue and been adequately trained and made to comply with all aspects of its duties as a designated title agent for the State of Alabama, the Motor Vehicle Information Costs Savings Act and the Uniform Certificate of Title and Anti-Theft Act;

Respectfully submitted,

Thomas C. Donald, ASB-6795-A47D
Michael E. Parrish, ASB-5747-S69M
Parrish & Donald
Alabama Car Lawyers LLC
1707 29th Court South
Birmingham, Alabama 35209
Phone (TCD): 205 985 2309
Email (TCD): cdonald@alabamacarlaw.com

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**